Peter J. Larkin, Esq.
Thomas R. Manisero, Esq.
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
1133 Westchester Avenue
White Plains, NY 10604-3407
Tel:    (914) 323-7000
Fax:   (914) 323-7001
Email:  peter.larkin@wilsonelser.com

Attorneys for Plaintiff
GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS, P.C.

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

|  |  |
|---|---|
| GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS, P.C., | : Index No. |
|  | : |
|  | : |
| Plaintiff. | : |
|  | : |
| -against- | : |
|  | : |
| ERIC MARTINEZ, TIMOTHY LAMM and THE LBA GROUP, | : |
|  | : |
|  | : |
| Defendants. | : |

------------------------------------------------------------------ x

### VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, GRASSI & CO., CERTIFIED PUBLIC ACCOUNTANTS, P.C., by its attorneys Wilson Elser Moskowitz Edelman & Dicker LLP, as and for its complaint (the "Complaint") against the defendants, ERIC MARTINEZ, TIMOTHY LAMM and THE LBA GROUP (collectively the "Defendants"), alleges as follows:

### THE PARTIES

1.      That at all times mentioned, the plaintiff, Grassi & Co., Certified Public Accountants, P.C. ("Plaintiff"), is a professional corporation with a principal place of business at

488 Madison Avenue, New York, New York 10022.   Plaintiff is a leading accounting and business consulting firm serving a diverse range of clients in the New York metro area, nationally and around the world.

2.      That, upon information and belief, defendant, Eric Martinez ("Martinez") resides at 353 Sparrow Branch Circle, Jacksonville, Florida 32259, and is a former employee and shareholder of Plaintiff.

3.      That, upon information and belief, defendant, Timothy Lamm ("Lamm") resides at 6648 White Blossom Circle, Jacksonville, Florida 32258 and is Plaintiff's former employee.

4.      That at all times mentioned, the defendant, The LBA Group ("LBA"), is a company with a principal place of business at 501 Riverside Avenue, Suite 800, Jacksonville, Florida 32202.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because it involves citizens of different states and an amount in controversy exceeding the sum of $75,000.00, exclusive of interest and costs.

6.      Venue of this action in the Southern District of New York is proper under 28 U.S.C. § 1391 (a)(2) in that it is the District where a substantial part of the events giving rise to this action occurred.

## BACKGROUND FACTS

**The Shareholders' Agreement:**

7.      Martinez was employed by Plaintiff from December 7, 2009 and was an equity partner and shareholder of Plaintiff from January 1, 2013 until December 6, 2013.

5759440v.2

8.      As a Shareholder, Martinez was asked to sign a Third Amended and Restated Shareholders' Agreement (the "Shareholders' Agreement").  Martinez was given a copy of the Shareholders' Agreement to review and was given an opportunity to discuss the terms of the Shareholders' Agreement with an attorney.

9.      On May 31, 2013, Martinez executed a Consent to be bound by the Shareholders' Agreement and returned the Consent to Plaintiff.  A copy of the Shareholders' Agreement with Martinez's Consent is attached hereto as **Exhibit "A"**.

10.     Martinez acknowledged in the Shareholders' Agreement the confidentiality and proprietary nature of Plaintiff's customer and business information, with which he was to become intimately familiar, and agreed that he therefore would not solicit Plaintiff's customers for a period of two (2) years following the termination of his employment:

> A former Shareholder . . . shall not, directly or indirectly, for a period of two (2) years from the effective date of . . . withdrawal (the "Restricted Period"): (i) approach, contract with, solicit or accept business from, or provide accounting or consulting services for himself or herself or others, including any firm in which he or she becomes a principal, partner, shareholder, member, officer, consultant, associate, employee or independent contractor, directly or indirectly, from any Client which was a Client of the Corporation . . . at the effective date of such Shareholder's . . . withdrawal (a "Restricted Client"); or (ii) disturb, or in any other matter interfere with or cause the termination of, the Corporations relationship with any Restricted Client.

Exhibit A, ¶ 14.3.

11.     Martinez also agreed to refrain from engaging or soliciting other employees of Plaintiff:

> The Shareholder acknowledges that the loss of any employee would cause damage to the Corporation its divisions, subsidiaries or Related Entities and that the current cost of obtaining employees form employment agencies rages from twenty percent to thirty percent (20% to 30%) of such employee's annual salary.

3

> Accordingly if, during the Restricted Period, the former Shareholder or any firm in which such former Shareholder is or becomes a principal, partner, officer, consultant, associate or employee . . . hires, engages or solicits for employment, or induces the termination of the employment relationship with the Corporation by, any Person who is an employee of the Corporation . . . then such former Shareholder shall pay to the Corporation in the manner hereinafter set forth, as liquidated damages and not as penalty, an amount equal to the sum of (i) thirty percent (30%) of the gross wages paid to such employee with respect to the twelve (12) month period immediately preceding the date of the Shareholder ceases to be employed by the Corporation . . . plus (ii) 20% of such gross wages amount to compensate Corporation for the costs of training a replacement for such departed employee.

Exhibit A, ¶ 14.4(c).

12. In the Shareholders' Agreement, Martinez also unequivocally acknowledges the confidentiality of Plaintiff's customer and business information:

> Each Shareholder recognizes and acknowledges that such Shareholder has access to valuable proprietary, confidential and trade secret information of the Corporation, including the Corporation's client lists, fee structures, policies and procedures, strategic plans, financial information and other proprietary information, as well as proprietary information about the Corporation's clients, including client files, client lists and database (collectively, "Confidential information"), and that such Confidential Information constitutes valuable, special and unique assets of the Corporation . . . .

Exhibit A, ¶ 14.2.

13. Under the Shareholders' Agreement, the term of Martinez's non-disclosure and other restrictive and protective covenants is two (2) years (the "Restricted Period"). Exhibit A, ¶ 14.3.

14. The Shareholders' Agreement provides for specifically defined liquidated damages should Martinez violate the above restrictive covenants or any of the other protective covenants established therein. Exhibit A, Article 14.

4

15.      Martinez further agreed that he would be responsible for attorneys' fees and expenses incurred as a result of his breach of the Shareholders' Agreement.   Specifically, Martinez agreed as follows:

> Each of the parties hereby agrees to indemnify and hold the others harmless form and against any and all claims, liabilities, obligations, costs and expenses (including reasonable attorneys' fees) resulting from or arising out of the breach of any of the representations, warranties, covenants or agreements made by the indemnifying party hereunder.

Exhibit A, ¶ 19.

16.      The restrictive covenants in the Shareholders' Agreement, as set forth above, are reasonable and typical for employees like Martinez working at companies similar to Plaintiff.

**The Lamm Employment Agreements:**

17.      Lamm was an employee of Plaintiff from September 4, 2012 and achieved the title of Audit Manager by the time he terminated his employ with Plaintiff on September 25, 2015.

18.      As an employee of Plaintiff, Lamm was asked to sign a Non-Disclosure of Trade Secrets and Confidential Information Agreement and Restrictive Covenant Agreement (together, the "Non-Disclosure Agreement").  Lamm was given a copy of the Non-Disclosure Agreement to review and was given an opportunity to discuss the terms of the Non-Disclosure Agreement with an attorney.

19.      On September 4, 2012, Lamm executed the Non-Disclosure Agreement and returned it to Plaintiff.  A copy of the Non-Disclosure Agreement signed by Lamm is attached hereto as **Exhibit "B"**.

5

20.     Lamm acknowledged in the Non-Disclosure Agreement the confidentiality and proprietary nature of Plaintiff's customer and business information, with which he was to become intimately familiar:

> I acknowledge the Confidential Information of the Company is a special valuable, and unique asset of the Company, and I agree at all times during the period of my employment, and at all times after termination of such employment, not to disclose, directly or indirectly, for any purpose and to keep in strict confidence and trust all of such Confidential Information.

Exhibit B (Non-Disclosure), ¶ 3.

21.     Lamm further acknowledged that:

> by virtue of my employment with the company and its clients I have had or will have access to Trade Secrets and Confidential Information of the Company, the disclosure of which will irreparably harm the Company or its clients.   I further acknowledge the Company will be entitled, in addition to its other rights, to enforce my obligations under this Agreement by an injunction or decree of specific performance from a court having proper jurisdiction. .
> . . . .
> This provision does not limit any other type of relief to which the Company might be entitled in the event of any breach or threatened breach of this Agreement by me, including but not limited to, an appropriate award of compensatory damages and/or punitive damages.

Exhibit B (Non-Disclosure), ¶ 6.

22.     The Non-Disclosure Agreement was revised and accepted by Lamm, as an audit manager, in its updated form on April 29, 2015 (the "2015 Agreement").  A copy of the 2015 Agreement is attached as **Exhibit "C"**.

23.     The 2015 Agreement mirrored the Non-Disclosure Agreement but further provided:

> I further agree that I will return all originals and copies, whether written or electronic, of any material containing Confidential

> Information at the time my employment with the Company
> terminates for any reason. If I shall breach this non-disclosure
> covenant, I shall indemnify the Company for any and all losses,
> costs, liabilities and expenses arising out of or resulting from such
> breach.
>
> I agree that all . . . [of] the Company's property . . . shall be
> delivered by me to the Company on the termination of my
> employment or at an earlier time on the request of the Company
> . . . . I shall not retain copies (either paper or electronic) of any
> Confidential Information, nor shall the Employee give, transfer,
> transmit or in any other manner disclose any of the information
> contained in such documents to any persons, firms or
> organizations.

Exhibit C (Non-Disclosure), ¶ 2.

24.    The 2015 Agreement also established a fiduciary relationship between Lamm and

Plaintiff:

> I acknowledge that by virtue of my use of Confidential Information
> on behalf of the Company there is a fiduciary relationship between
> the Company and me with respect to my use and handling of the
> Company's Confidential Information.

Exhibit C (Non-Disclosure), ¶ 2.

25.    The 2015 Agreement again established the confidentiality and proprietary nature

of Plaintiff's customer and business information, with which Lamm was to become intimately

familiar, and Lamm thus agreed that he would not solicit Plaintiff's customers for a period of

two (2) years following the termination of his employment:

> I shall not, during my employment and for Restricted Period of
> twenty-four (24) months following termination of my employment
> with the Company for any reason, directly or indirectly, solicit,
> assist others in obtaining as a client, or accept an engagement to
> perform or perform any professional services for, other than on
> behalf of the Company, any Client or prospective Client.

Exhibit C (Restrictive Covenant), ¶ 3; *see also* Exhibit B (Restrictive Covenant), ¶ 3.

26.     Lamm further agreed that:

> Nothing contained herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or the threat of such a breach by me, including the recovery of any damages which it is able to prove.

Exhibit C (Restrictive Covenant), ¶ 6; *see also* Exhibit B (Restrictive Covenant), ¶ 6.

27.     The restrictive covenants in the Non-Disclosure Agreement and the 2015 Agreement as set forth above (together, the "Employment Agreements"), are reasonable and typical for employees like Lamm working at companies similar to Plaintiff.

28.     Finally, on Lamm's last day of employment with Plaintiff, he executed a Termination Certification wherein he certified that:

> I do not have in my possession, nor have I failed to return: (1) computer software in any form or medium belonging to Grassi & Co. and/or any of its divisions, affiliated entities, successors and assigns ("the Firm") or any of its clients; (2) any information or materials intended to be of a confidential nature in any way pertaining to any of the Firm's computer software products or those of its clients; (3) any information or materials intended to be of a confidential nature obtained during the court of my employment by the Firm; or (4) any records, documents, data, laboratory sketches, notes, reports, proposals, or copies of them, or other documents or materials, equipment or other property belonging to the Firm, or any of its clients.
> I further certify that I have complied with and will continue to comply with all the terms of the Firm's Employee handbook relating to my obligations to protect the confidential nature of the materials and information described in the preceding paragraph . . . .
> I further agree that I will preserve as confidential all trade secrets and confidential knowledge, data or other proprietary information relating to . . . the Firm or any of its clients, customers, consultants, licensees or affiliates.

A copy of the Termination Certification is attached as **Exhibit "D"**.

8

**Resignation, Solicitation and Breach:**

29.    On or about October 7, 2013, Martinez unexpectedly voluntarily terminated his position at Plaintiff as an equity partner, giving only seven (7) weeks notice.

30.    Martinez advised Plaintiff that he would be assuming employment at LBA, a Jacksonville, Florida-based CPA firm specializing in accounting, healthcare consulting and wealth management.  Martinez's role at LBA appears to be a mirror image of his role at Plaintiff.

31.    Within two (2) years of Martinez withdrawing from Plaintiff, Martinez began pursuing and soliciting Brad Hillman ("Hillman"), an employee of Plaintiff since February 2, 2010, to leave Plaintiff and start new employment with a customer/client of LBA, Enduris, Inc.

32.    As a result of Martinez's actions, Hillman quit Plaintiff on July 3, 2014 and began new employment with Enduris, Inc.

33.    Also within two (2) years of Martinez withdrawing from Plaintiff, Martinez began pursuing and soliciting Lamm to join him at LBA, in direct violation of the Shareholders' Agreement.

34.    As a result of Martinez's actions, Lamm quit Plaintiff on September 25, 2015 and began new employment with Martinez at LBA as an audit manager.

35.    Martinez's acts of solicitation of Plaintiff's employees was a direct violation of the Shareholders' Agreement.

36.    In an apparent attempt to conceal Martinez's wrongdoing, Lamm did not advise Plaintiff of his new employment.  In fact, when asked, Lamm specifically denied that he would be starting employment at LBA.  Lamm also refrained from updating any of his professional information on sites such as LinkedIn where he is still listed as an employee of Plaintiff.

37.    When called, LBA denied that it currently employs Lamm.

5759440v.2

38.     Despite LBA's assertions and Lamm's misrepresentations, LBA's automated phone directory clearly states that Lamm is employed there and directs callers to Lamm's voicemail.

39.     Lamm also executed an LBA Employment Agreement on or about August 6, 2015. A copy of the LBA Employment Agreement and LBA Offer Letter is attached hereto as **Exhibit "E"**.

40.     The Defendants are actively concealing Lamm's current employment.

41.     Moreover, in addition to convincing Lamm to begin new employment at LBA, Lamm was also convinced to copy and remove multiple Plaintiff client files for the benefit of the Defendants.

42.     Lamm has no legal right to the client files that he copied and he has failed to return those files to Plaintiff despite signing the Termination Certification in which he certified that all such files were returned.  Exhibit D.

43.     Upon information and belief, LBA and/or Martinez identified the specific client files Lamm was to copy and convert.

44.     Upon information and belief, the Defendants intend to utilize the wrongfully acquired client files for their own personal benefit and to the detriment of Plaintiff.

45.     Simply put, Martinez, Lamm and LBA have teamed up to trade on Plaintiff's acquired knowledge and confidential information.  This is a flagrant violation of the restrictive covenants of the Shareholders' Agreement and Employment Agreements.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract Against Martinez)

46.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 45 inclusive, as if fully set forth herein.

5759440v.2

47.     The Shareholders' Agreement is an enforceable contract under New York law.

48.     Martinez is currently in breach of the restrictive covenant established in the Shareholders' Agreement, paragraph 14.4(c), as set forth above.  Exhibit A, ¶ 14.4(c).

49.     Prior to the expiration of the two (2) year restrictive period, Martinez solicited and engaged Hillman for employment and/or induced Hillman to terminate his employment relationship with Plaintiff.

50.     Prior to the expiration of the two (2) year restrictive period, Martinez solicited and engaged Lamm for employment and/or induced Lamm to terminate his employment relationship with Plaintiff.  Exhibit A, ¶ 14.4(c).

51.     Plaintiff is therefore entitled to liquidated damages in amount equal to the sum of (i) thirty percent (30%) of the gross wages paid to Hillman and Lamm with respect to the twelve (12) month period immediately preceding the date Martinez ceased to be employed by Plaintiff plus (ii) twenty percent (20%) of the gross wages of any new hire, necessary to compensate Plaintiff for the costs of training Hillman's and Lamm's replacement.  Exhibit A, ¶ 14.4(c).

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Against Lamm)

52.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 51 inclusive, as if fully set forth herein.

53.     The Employment Agreements are valid and enforceable contracts under New York law.

54.     Lamm copied and retained paper and/or electronic files related to Plaintiff's clients after he resigned from Plaintiff.

55.     Upon information and belief Lamm has turned these confidential files over to Martinez and/or LBA for the use and the benefit of all the Defendants.

11

56.     Lamm is currently in breach of the restrictive covenant established in the 2015 Agreement as set forth above.   Exhibit C (Restrictive Covenant), ¶ 3; *see also* Exhibit B (Restrictive Covenant), ¶ 3.

57.     To the extent Lamm intends to use, or has already used, the Plaintiff's confidential information to solicit Plaintiff's clients, Lamm is also in violation of the 2015 Agreement. Exhibit C (Non-Disclosure), ¶ 2; Exhibit C (Restrictive Covenant), ¶ 3.

58.     Lamm's deliberate retention of Plaintiff's confidential information and files has caused Plaintiff significant and continuing harm for which Plaintiff may recover compensatory damages. Moreover, Lamm's conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of Lamm and in complete disregard for Plaintiff's rights, therefore Plaintiff may recover punitive damages from Lamm.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Conversion and Civil Theft Against Lamm)

59.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 58 inclusive, as if fully set forth herein.

60.     Plaintiff's client files contain confidential and proprietary information which Plaintiff assembled over many years and at great expense.  The information includes, *inter alia*, confidential details of client financial information and contacts.  This information was kept confidential from all outsiders.  Lamm never owned this information.

61.     Prior to terminating his employment with Plaintiff, Lamm wrongfully copied multiple client files belonging to Plaintiff without Plaintiff's consent and with the intent of using those files for his own purposes and benefit, to the detriment of Plaintiff and to the benefit of the Defendants.

12

62.     After terminating his employment with Plaintiff, Lamm continued to wrongfully exercise dominion and control over, and otherwise misappropriated, Plaintiff's client files.

63.     Lamm's purpose was and is to divert Plaintiff's clients and their business to the Defendants.

64.     By knowingly and unlawfully misappropriating and stealing Plaintiff's confidential and proprietary information, Lamm committed conversion.

65.     Lamm's deliberate conversion and theft of Plaintiff's client files has caused Plaintiff significant and continuing harm for which Plaintiff may recover compensatory damages. Moreover, Lamm's conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of Lamm and in complete disregard for Plaintiff's rights, therefore Plaintiff may recover punitive damages from Lamm.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Civil Conspiracy to Commit Conversion and Civil Theft Against All Parties)

66.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 65 inclusive, as if fully set forth herein.

67.     As set forth in the preceding paragraphs, Lamm converted confidential and proprietary documents belonging to Plaintiff for the use and benefit of Defendants.

68.     At all times relevant to this dispute, Plaintiff had exclusive legal ownership and an immediate superior right of possession over copies of all confidential and proprietary Plaintiff documents that were converted by Lamm.  The documents stolen and converted by Lamm are specifically identifiable property that rightfully belong to Plaintiff.

69.     At all times, Martinez and LBA had actual knowledge of Lamm's intention to convert Plaintiff's files and to disclose such files and the contents thereof to LBA and Martinez.

Moreover, LBA and Martinez knowingly participated in and substantially assisted Lamm's unlawful conduct by, *inter alia,* concealing Lamm's current employment at LBA and identifying the specific files Lamm was to steal.

70.    Upon information and belief, Martinez and/or LBA have further utilized, or intend to utilize, the converted files for their own benefit.

71.    The Defendants' conduct has caused significant and continuing harm for which Plaintiff may recover compensatory damages.  Moreover, the Defendants' conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of the Defendants and in complete disregard for Plaintiff's rights, and therefore Plaintiff may recover punitive damages from the Defendants.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Fraud Against Lamm)

72.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 71, inclusive, as if fully set forth herein.

73.    Lamm converted at least five (5) of Plaintiff's client files.   The portfolio clients create approximately $866,000.00 of revenue for Plaintiff each year.

74.    Lamm's conversion of Plaintiff's client files with the intent to use them to the detriment of Plaintiff was an intentional act committed by Lamm.

75.    Further, upon information and belief, Lamm's deception in copying Plaintiff's client files while preparing to terminate his employment with Plaintiff encompassed many weeks, if not months.

76.    During this time, Lamm actively deceived, concealed and misled Plaintiff so that Plaintiff was fraudulently led to believe that Lamm was acting in the best interest of Plaintiff

14

when in fact he was stealing confidential and proprietary information with the intent to use it for the benefit of the Defendants.

77.     Lamm further certified that he had returned all client files in his possession despite knowing that this statement was false. *See* Exhibit D.

78.     This continuing misconduct permitted Lamm to extend the time during which he engaged in malfeasance and during which he could utilize the converted files and/or misappropriate the files for the benefit of Defendants.

79.     Lamm's conduct has caused significant and continuing harm for which Plaintiff may recover compensatory damages.  Moreover, Lamm's conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of Lamm and in complete disregard for Plaintiff's rights, and therefore Plaintiff may recover punitive damages from Lamm.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Conspiracy to Commit Fraud Against All Defendants)

80.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 79 inclusive, as if fully set forth herein.

81.     As set forth in the preceding paragraphs, Lamm stole confidential and proprietary documents belonging to Plaintiff for the use and benefit of the Defendants.

82.     At all times, Martinez and LBA had actual knowledge of Lamm's fraudulent actions.  Moreover, LBA and Martinez knowingly participated in and substantially assisted Lamm's unlawful conduct by, *inter alia,* concealing Lamm's current employment at LBA and identifying the specific files Lamm was to steal.

83.     Upon information and belief, Martinez and/or LBA have further utilized, or intend to utilize, the stolen files for their own benefit.

15

84.     The Defendants' conduct has caused significant and continuing harm for which Plaintiff may recover compensatory damages.  Moreover, the Defendants' conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of the Defendants and in complete disregard for Plaintiff's rights, and therefore Plaintiff may recover punitive damages from the Defendants.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty Against Lamm)

85.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 84 inclusive, as if fully set forth herein.

86.     As set forth above, a fiduciary relationship existed between Plaintiff and Lamm. *See,* Exhibit C (Non-Disclosure), ¶ 2.

87.     Lamm's conversion of Plaintiff's client files with the intent to use them to the detriment of Plaintiff was an intentional act committed by Lamm and a breach of the fiduciary duty owed to Plaintiff.

88.     Lamm's conduct has caused significant and continuing harm for which Plaintiff may recover compensatory damages.  Moreover, Lamm's conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of Lamm and in complete disregard for Plaintiff's rights, and therefore Plaintiff may recover punitive damages from Lamm.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### (Aiding and Abetting Against Martinez and LBA)

89.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 88 inclusive, as if fully set forth herein.

16

5759440v.2

90.     As set forth in the preceding paragraphs, Lamm breached his fiduciary duty to Plaintiff when he converted Plaintiff's confidential files for his own use and for the use of Martinez and LBA.

91.     Upon information and belief, Martinez and/or LBA knowingly aided and abetted Lamm by directing Lamm to steal specific client files and offering to conceal Lamm's new employment from Plaintiff.

92.     LBA's and Martinez's conduct has caused significant and continuing harm, for which Plaintiff may recover compensatory damages.  Moreover, LBA's and Martinez's conduct was willful, malicious, demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations, intended to harm Plaintiff for the benefit of LBA and Martinez and in complete disregard for Plaintiff's rights, and therefore Plaintiff may recover punitive damages from LBA and Martinez.

### AS AND FOR A NINTH CAUSE OF ACTION
### (Replevin Against All Defendants)

93.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1 through 92 inclusive, as if fully set forth herein.

94.     By reason of the Defendants' wrongful acts, Grassi has sustained damages for wrongful detention, wrongful use and loss of its clients' files, and is entitled to a judgment of replevin.

5759440v.2

WHEREFORE, Plaintiff, Grassi & Co., Certified Public Accountants, P.C. demands judgment against the defendants, Eric Martinez, Timothy Lamm and The LBA Group as follows:

1) Adjudging that Plaintiff is entitled to the immediate possession of the aforesaid client files and documents and that said client files and documents, and any copies thereof, digital or otherwise, be immediately delivered to Plaintiff;

2) A preliminary and permanent injunction restraining Lamm, whether alone or in concert with Martinez, LBA or any employee or agent of LBA or anyone else, from soliciting or attempting to solicit or induce, directly or indirectly, any client or customer of Plaintiff, for the purpose of marketing, selling or providing to any party any services or products the same as, similar to, or competitive with the services or products offered by or available from Plaintiff for a period of two (2) years;

3) A preliminary and permanent injunction restraining Lamm, whether alone or in concert with Martinez, LBA or any employee or agent of LBA or anyone else, from soliciting or attempting to solicit or induce, directly or indirectly, any client or customer of Plaintiff using the copied and converted confidential information of Plaintiff, for any purpose;

4) A preliminary and permanent injunction restraining Lamm, whether alone or in concert with Martinez, LBA or any employee or agent of LBA or anyone else, from using or disclosing in any way any of Plaintiff's confidential information and/or trade secrets;

5) A preliminary and permanent injunction restraining Martinez, whether alone or in concert with Lamm, LBA or any employee or agent of LBA or anyone else, from soliciting or attempting to solicit or induce, directly or indirectly, any client or

18

customer of Plaintiff using the copied and converted confidential information of Plaintiff, for any purpose;

6) A preliminary and permanent injunction restraining Martinez, whether alone or in concert with Lamm, LBA or any employee or agent of LBA or anyone else, from using or disclosing in any way any of Plaintiff's confidential information and/or trade secrets;

7) Compensatory and punitive damages in an amount to be determined at trial, including attorneys fees and the costs of this action; and

8) Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Grassi & Co., Certified Public Accountants, P.C. demands trial by jury in this action of all issues so triable.

Dated: White Plains, New York
     December 4, 2015

                WILSON, ELSER, MOSKOWITZ,
                EDELMAN & DICKER LLP

By: _____
                Peter J. Larkin
                Attorneys for Plaintiff
                GRASSI & CO., CERTIFIED PUBLIC
                ACCOUNTANTS, P.C.
                1133 Westchester Avenue
                White Plains, New York 10604
                (914) 323-7000
                File No.: 07524.00026

<u>VERIFICATION</u>

STATE OF NEW YORK    )
                         ) ss.
COUNTY OF NEW YORK  )

Ronald J. Eagar, being duly sworn deposes and says:

I am the Chief Operating Officer and a Partner of Grassi & Co., Certified Public Accountants, P.C., a leading accounting and business consulting firm serving a diverse range of clients in the New York metro area and around the world, and the plaintiff in the within action; I have read the foregoing Verified Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matter, I believe them to be true, and if called upon to testify I would competently testify as to the matters stated herein.

I verify under penalty of perjury under the laws of the United States of America that the factual statements in this *Complaint* concerning Eric Martinez, Timothy Lamm and The LBA Group and their planned activity are true and correct.

_____
Ronald J. Eagar

Sworn to before me this
2nd day of December, 2015

_____

DIANE SMITH
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01SM4517032
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES DECEMBER 31, 2018

5759440v.2